Good morning, your honors. My name is Andy Fick, and I represent the defendant appellant in this case, Canku Martinez. Canku respectfully requests that this court overturn his convictions for two reasons. First, the charges involving N.W. were prejudicially joined with an additional sexual assault allegation involving Ms. Keely Bordeaux. And second, there was insufficient credible evidence for the jury to convict Canku. Regarding the first issue, what we're dealing with is a prejudicial joinder involving two separate sexual assault allegations, your honor. Or your honors. Specifically, the prejudice that we're involving here is not just the fact that there happened to be two sexual assault allegations, but rather the allegations involving Ms. Bordeaux involved allegations of incest because the two were half-siblings. This allegation of incest, essentially of sexual deviant conduct, is the additional prejudice that was the reason why these charges should have been separated. Was that fact stressed at trial in any way? I believe it came up, but I don't believe that it was stressed in and of itself, your honor. The fact is that it still is part of it, and you can't unhear the fact that they were siblings, or excuse me, half-siblings. Additionally, the other component of this, your honor, is not only are we dealing with this extra prejudice, but it's also the fact that in the facts of that allegation, it was stated or alleged that it was Chonku that initiated this contact. Essentially, predatory incestuous conduct. It is that combination of things that makes the prejudice compounded in this case. Finally, one of the last pieces of the prejudice that I'm going to touch on, your honors, is the fact that not only were these allegations disputed, but there was actually allegations, excuse me, but actually the fact that Chonku raised the issue that he was being blackmailed, that he was being extorted, and that these were fabricated allegations for Ms. Bordeaux's financial benefit. So much, and sorry, your honors, I'm a little bit nervous, but not only that, but it's the fact that Chonku reported this to the authorities before they ever contacted him at any point related to this alleged sexual assault. This is something that Chonku wanted to discuss, wanted to talk about, wanted to get the truth on the record about, and it's because of all of these reasons that this prejudice has built up as related to these charges, that there should have been separate- So that related to the charges with the half-sister, right? Yes, your honor. So in some ways, if he were able to get that evidence out in the trial as to both, might that not help as to both charges? Well, the concern, your honor, is the split verdict. We have allegations of incest, we have allegations of sexual assault against essentially a minor, someone who's 16, and it's that combination of things that's brought to the jury, and then they return to verdict where there's a conviction on one set of charges and acquittal on the other. Counsel, it seems to me that the nature of the split is rather important here. The jury found him not guilty as to his half-sister, Bordeaux. Why doesn't that dispel the notion of prejudice? The problem, your honor, is that when there's two allegations, the prejudice is just the fact that this person may be a bad person, so as a jury, we can't let him go completely free. We're going to find him guilty on a set of charges. And regarding the distinction- Counsel, isn't that always a problem with joint, in a case where offenses are joined? And the Tyndall case from 2001 has facts very similar to these, and jointer was appropriate or approved on appeal. But your argument sounds like jointer would be disfavored, which is exactly contrary to what our precedents say. You're exactly right, your honor, in that the risk of a split verdict is always present. I absolutely agree with that. What I'm saying is that the facts here are different, not only because of the incest and the allegation of sexual deviancy, but also the fact that these were allegations that were the product of extortion or the product of blackmail. And it's the fact that the evidence itself was also shaky to begin with that it should have been excluded on 403 grounds. Unless there are additional questions on the first issue, I'll move to the second issue as it relates to the insufficiency of the credible evidence. What this really comes down to, your honor, one of the facts that I think sticks out is the fact that everyone agrees as to how the evening began and how the evening essentially started in terms of Chonku was asked to take N.W. home, or N.W. asked Chonku to take her home, which he does. He makes sure that she gets into the house. He sees that she gets in safely. He leaves. At that point, there is no possible way for Chonku to know that N.W. is going to contact him or Facebook message him that night. As far as Chonku knows at that time, he is never going to see her again. It is at that point that N.W. then requests that Chonku come back to her home to get her, which he does, because N.W. is saying that she needs to get her cell phone charger for her phone. So Chonku goes back to N.W.'s house. They return to the party that was occurring that night. And again, N.W. is surrounded by friends and family, and she asks again for Chonku to take her home. Up to that point, there's essentially no dispute about the facts. Now, at that point, and I think this is where trial counsel, Clint Sargent, had it right, Your Honors, is that as this night unfolds, they're spending hours together. N.W. has access to her phone. This isn't a situation that we're isolating someone for the purpose of completing a sexual assault, but rather this was a situation that involved two people that engaged in consensual sexual contact. What was the timeframe between the time they go back, get the charger, and ultimately she gets home and reports what happened? It's a little bit unclear, Your Honor. I believe there was testimony as to N.W.'s mother that she heard her home sometime after 1 o'clock, and then they do go back to the party, and then I believe N.W. ends up at home sometime in the early morning hours. I want to say like 4 or 5 a.m. I apologize if that's but it's right around that, Your Honor. Counsel, why doesn't this line of argument... Go ahead. Doesn't the physical evidence of injury, medical evidence of injury, contradict consensual involvement? Respectfully, Your Honor, we would disagree. The allegations of physical injury related to strangulation, an allegation that there is a knife held to N.W.'s throat, the physical evidence didn't support any type of injuries to N.W.'s throat. So we would say that the physical evidence doesn't support that, Your Honor. I was just wondering why this line of argument doesn't eventually lead to a witness credibility assessment, which we cannot do on appeal. Yes, Your Honor. There is no witness credibility assessment, but what we're saying is that physical evidence, for example, such as no wounds to the neck, the fact that Chonku was able to take N.W. home and not know that she was there, we would say that there is no credible evidence that disputes what Chonku had offered to the jury, Your Honor. Unless there are additional questions, I'll reserve the remainder of my time. You may. Thank you. Good morning, Judge Smith, Judge Kelly, Judge Graz. May it please the Court, my colleague, Mr. Fick, I'm Kirk Albertson. I represent the United States in this case. We are asking that the judgment and sentence be affirmed. The counts of conviction in this case stem from an incident that occurred in October of 2023. Counts 4 and 5 related to the allegations by N.W. The defendant was acquitted of counts 1, 2, and 3, which related to the allegations by K.B. Joinder of the charges under Rule 8 was proper. These were charges of the same type of offense. There was temporal proximity, and there was some evidence overlap. What the appellant focuses on is an argument that, and this was not raised at the trial error, so the standard of the Court applies is plain error regarding severance. The District Court did not plainly err by failing to sua sponte, sever the charges. You said that there was some overlapping evidence. What's the overlapping evidence? It primarily comes to the testimony of the case agent, Special Agent Enting, who testified about his review of the phone evidence. There was evidence of messages related to N.W.'s allegations and the appellant exchanging messages with N.W.'s stepmother immediately after the incident. Basically, she's confronting him. There was also a review for evidence related to messages between the appellant and K.B. regarding her allegation. But that's just a case agent gathering stuff. Is that really overlapping in the sense of a factual overlap of two separate allegations? Wouldn't you call an agent to testify about the text messages as to one count and then in another trial, you'd call the person to just say other things about another phone and text? That's a fair view of it, too, Your Honor. It certainly could have been separated, but it was one agent looking at one phone that had evidence on it related to both allegations. But you're correct. That easily could have been dealt with. It's not as if there were lay witnesses that had involvement on both occasions. You're correct. Yes, Your Honor. I want to address appellant's claim about this idea of cumulative effect results in severe or compelling prejudice. Judge Kelly, you pointed this out, this concern about incest being stressed at trial, because it absolutely was not. But both in appellant's opening brief and in the reply brief, they used the word incest to characterize K.B.'s allegations. I double-checked the transcript. The term incest is not even used at the trial level. K.B. was not alleging incest. She alleged being sexually abused at knife point by someone who happened to be her half-brother. The defense was not at all that this was embarrassing incest, and that's why she made it up. The defense was this was something that didn't happen, that she made up the whole thing. There was no motion practice to limit her testimony regarding the nature and extent of her relationship with the appellant. The concept of incest went completely unmentioned. So it's a stretch to now claim on appeal that the quote-unquote inflammatory crime of incest was even a factor or should be a consideration. That was one piece of it. The second thing is about the claim of dissimilarity between the allegations. And it's perhaps because the allegations are so similar that appellant really now struggles to point out a dissimilarity. And what they've settled on is this idea that, well, it appears that the appellant was initiating contact with K.B. on the flip side, and W. was the one initiating contact with the appellant, which seems like a very narrow distinction. But even assuming for a moment that that's true and accurate, take a step back and you see that a step removed. The similarity is there's some messaging back and forth between the appellant and the victims, resulting in both of them being alone with the appellant in his vehicle. And after that, the appellant drives both victims to a secluded area where he produces a weapon and sexually assaults each of them. Those are the claims. And finally, and each of the judges pointed this out regarding the fact that K.B.'s allegations resulted in an acquittal, this actually weighs against the appellant's argument that he was prejudiced because it shows, clearly shows, that the jury was able to separately consider each charge and the evidence related to that charge and render a separate verdict and not rely solely on propensity evidence. So for those reasons, the district court did not plainly err. I want to address briefly the sufficiency of the evidence argument because it really does boil down to an attack on N.W.'s credibility. And Judge Graz, you pointed this out, but I think each of the judges had a point about this. This court can't do a credibility determination. The argument is all about the inherent believability or improbability of N.W.'s allegations and inconsistencies in her prior statements. As they claimed at trial, the appellant continues to claim this was a consensual encounter. That's what the appellant testified to at trial. The jury considered all of that evidence at trial and in reaching its verdict, the jury was in the best position to weigh the testimony and those arguments, which are the same arguments now being presented to this court. And that's all why the jury's credibility determinations are, quote-unquote, well nigh unreviewable, to use language this court has previously used. This is not the extreme circumstance where the victim testified to facts that are physically impossible that would merit reversal. Judge Smith, you pointed out the physical evidence corroborates the victim's testimony. The DNA evidence also corroborates the victim's testimony. Based on all the evidence presented, there is sufficient evidence that this court should affirm. Unless there are other questions, I will yield the balance of my time. Thank you. Thank you. I would just touch on two things, Your Honors. The first regarding the allegation of incest. Admittedly, the word incest was not used at trial. But again, I would go back to the fact that there were allegations of Ms. Bordeaux's half-brother being the aggressor in a sexual assault. And that evidence tainted the remainder of the trial as it relates to the charges involving NW. Additionally, the factual dissimilarity between the crimes is highlighted by the fact that, as I said previously, the fact that Chonku dropped off NW at her home, made sure that she got in safely, would have been the end of the night for Chonku. And he assumed it would have been the end of the night, and he would have had no reason to know that NW would contact him again. For these reasons, Your Honor, Chonku respectfully requests that this court overturn his convictions. Thank you. Thank you. Thank you to both counsels.